IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

KIMBERLY L. ROSENBERG, HOWARD I.　)
ROSENBERG,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　　)　　　　2:22-CV-00137-MJH
　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
HUDSON INSURANCE COMPANY,　　　　)
　　　　　　　　　　　　　　　　　　)

　　　　　　Defendant,

---

HOWARD I. ROSENBERG, KIMBERLY L.　)
ROSENBERG,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　　)　　　　2:22-CV-00198-MJH
　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
CHUBB INDEMNITY INSURANCE　　　　)
COMPANY,　　　　　　　　　　　　　)

　　　　　　Defendant,

OPINION

In this consolidated action, Plaintiffs, Howard I. Rosenberg and Kimberly L. Rosenberg,

bring the within actions seeking declaratory judgment for defense and indemnification under

Defendants, Hudson Insurance Company and Chubb Indemnity Insurance Company's, insurance

policies.  (ECF No. 1 at 2:22-CV-00137 and ECF No. 1 at 2:22-CV-00198)[1].  Said requests for

defenses and indemnification arise from a lawsuit filed by Intervenor, T. Lee Rouse, against the

Rosenbergs in the Allegheny County Court of Common Pleas, Docket No. GD21-14912.  The

---

[1] By Stipulation and Motion, Plaintiffs and Defendants agreed to consolidate these cases for all
purposes.  (ECF Nos. 12-13).  On March 7, 2022, the cases were consolidated by Order of Court.
(ECF No. 14).  By Stipulation and Order dated August 9, 2022, T. Lee Rouse was permitted to
intervene in this action.

parties have filed cross-motions for judgment on the pleadings. (ECF Nos.  20, 21, 23, and 25).
Those matters are now ripe for consideration.

Following consideration of the relevant pleadings and stipulations (ECF Nos. 1, 15, 18, and 31 at 2:22-CV-00137 and ECF No. 1 at 2:22-CV-00198 ), the parties' Motions for Judgment on the Pleadings (ECF Nos. 20, 21, 23, and 25), the respective briefs and appendices (ECF Nos. 22, 24, 26-29, 34-37)), and for the following reasons, the parties' motions will be disposed as follows:   the Rosenbergs' Motion for Judgment on the Pleadings against Chubb will be denied; Chubb's Motion for Judgment on the Pleadings against the Rosenbergs will be granted; the Rosenbergs' Motion for Judgment on the Pleadings against Hudson will be denied; and Hudson's Motion for Judgment on the Pleadings against the Rosenbergs will be granted.

I.      Background

The Rosenbergs' Declaratory Judgment actions stem from an underlying lawsuit filed by T. Lee Rouse against the Rosenbergs in the Allegheny County Court of Common Pleas (Rouse Complaint). The Rosenbergs have sought coverage for defense and indemnifications under insurance policies issued by Chubb and Hudson.  The Rosenbergs seek a Declaratory Judgment that each of the Chubb and Hudson policies require insurance coverage to provide them with a defense and/or indemnification in the Rouse Complaint.  Chubb and Hudson both contend that, under the facts and claims alleged in the underlying lawsuit, coverage for defense and indemnification is not available under the language of the policies.

A. Rouse Complaint[2]

In her complaint, Ms. Rouse alleges that, on December 21, 2019, the Rosenbergs' son, Adam Rosenberg, invited Ms. Rouse's son, Christian Moore-Rouse, to the Rosenbergs' residence, whereupon he murdered Christian with a handgun owned by the Rosenbergs. (ECF No. 1-2 at ¶¶ 20-22). Adam then allegedly dragged Christian's body across the roadway and hid it in a wooded public park near his parents' residence. *Id.* at ¶ 22.

Ms. Rouse alleges that Adam either confessed and gave the gun to the Rosenbergs, or that the Rosenbergs found the handgun and knew that, for a variety of reasons, it was "likely to be evidence of a crime committed by their son Adam." *Id.* According to the Rouse Complaint, at some point between the shooting and January 20, 2020, the Rosenbergs gave the handgun to Martha Laux, their marriage counselor, "in an effort to prevent or delay the arrest and prosecution of Adam Rosenberg." *Id.* at ¶ 28. On January 20, 2020, Ms. Laux then allegedly turned the gun over to the investigating homicide detectives, telling them that she found the handgun "on a trail . . . while walking her dog," rather than revealing that the gun came from the Rosenbergs. *Id.* at ¶ 29-30.

Ms. Rouse averred that, as a result of the above actions, the Rosenbergs and Ms. Laux "delayed the police investigation and ultimate March 3, 2020 discovery of Christian's decayed remains in the woods across the road from the Rosenbergs' residence." *Id.* at ¶ 32. As a result, Ms. Rouse allegedly experienced "the natural fear and severe emotional distress a Mother

---

[2] On May 26, 2022, the Allegheny County Court of Common Pleas sustained the Rosenbergs' Preliminary Objections under Pa.R.C.P. 1028 thereby dismissing Ms. Rouse's Complaint. On July 11, 2022, the Court of Common Pleas entered Judgment. Ms. Rouse has appealed that decision, which remains pending. The Rosenbergs contend that Chubb and/or Hudson should have accepted their tender for defense and/or indemnification despite the possibility that the underlying case may become moot depending upon the disposition of Ms. Rouse's appeal.

emotionally close to her young adult son would experience during that period of time." *Id*. at ¶ 35. The Rouse Complaint contains a single count against Mr. and Mrs. Rosenberg for intentional infliction of emotional distress. *Id*. Specifically, the Rouse Complaint recites of the elements of this offense, and states "as the direct result of [Defendants] above described extreme and outrageous actions . . . Defendants intentionally and/or recklessly caused Plaintiff to suffer and continue to suffer severe emotional distress." *Id*. at ¶¶ 37, 39.

II.     Relevant Standards

        A.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Selective Way Ins. Co. v. Gingrich*, No. 1:10-CV-405, 2010 WL 4362450, at *2 (M.D. Pa. Oct. 27, 2010) (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D. Pa. 2013)). A motion for judgment on the pleadings may be granted where "'the movant clearly establishes that no material issue of fact remains to be resolved' and that it is 'entitled to judgment as a matter of law.'" *Wiseman Oil Co. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 600 (W.D. Pa. 2012) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

4

B.  Insurance Policy Interpretation

Pennsylvania courts apply traditional rules of contract interpretation to insurance policies. The goal is to ascertain the parties' intent, as manifested by the policy language. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Pennsylvania courts give words of common usage their "natural, plain, and ordinary sense." *Kvaerner Metals Div. of Kvaerner v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).   In so doing, courts may consult dictionary definitions to determine their meaning. *Madison Constr.*, 735 A.2d at 108 ("Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense … and we may inform our understanding of these terms by considering their dictionary definitions."). Clear and unambiguous terms must be given their effect. *Nationwide Mut. Ins. Co. v. CPB Int'l*, 562 F.3d 591, 595 (3d Cir. 2009); *Kvaerner*, 908 A.2d at 897. "[A] provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe different meanings to it." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). An insured's "mere assertions that [it] expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1115 (Pa. Super. Ct. 2003).

C.  Duties to Defend and Indemnify

In determining whether an insurer has a duty to defend, Pennsylvania courts follow the "four corners" rule, which requires comparison of "the four corners of the insurance contract to the four corners of the complaint." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). "[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured." *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355-56 (Pa.

Super. Ct. 1996). "[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *see also Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the cause of action pled, [claimants] run afoul of our caselaw, which dictates that the factual averments contained in a complaint determine whether an insurer must defend."). This prevents "the use of artful pleadings designed to avoid exclusions in liability insurance policies." *Haver*, 725 A.2d at 745.

"The duty to defend is a distinct obligation, different from and broader than the duty to indemnify." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005) (citing *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 925 (Pa. Super. Ct. 2004)); *Atl. Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423 (E.D. Pa. 1994), *aff'd*, 60 F.3d 813 (3d Cir. 1995)). "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." Id. (citing *Haver*, 725 A.2d at 746 n.1; *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 356 n.3 (Pa. Super. Ct. 1996)); *see also Kvaerner*, 908 A.2d at 900 (Pa. 2006) ("[B]ecause the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify.").

III.   Discussion

   **A. Cross-Motions for Judgment on the Pleadings regarding defense and/or indemnification under Chubb Policy**

      1.   Chubb Policy

For a policy period from April 15, 2019 to April 15, 2020, Chubb issued a Masterpiece Homeowner's Liability Policy No. 11273641-01 to Howard I. and Kim K. Rosenberg. (2:22-cv-00198 at ECF No. 1-2 at 11). The Policy's Personal Injury Liability Coverage Part states, in part, that Chubb "cover[s] damages a covered person is legally obligated to pay for personal injury or

6

property damage which takes place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies." *Id*. at p. 50. The Personal Injury Liability Coverage Part further states, in part, that Chubb "will defend a covered person against any suit seeking covered damages for personal injury . . . ." *Id*. at p. 53. The Personal Injury Liability Coverage Part defines "damages" as "the sum that is paid or is payable to satisfy a claim settled by us or resolved by judicial procedure or by a compromise we agree to in writing." *Id*. at p. 51). "Covered person" is defined to include "you or a family member[.]" *Id*. "You" means "the person named in the Coverage Summary, and a spouse who lives with that person." *Id*. at A-1 (ECF No. 1-2 at 18). The Personal Injury Liability Coverage Part defines "personal injury" to include "bodily injury" and "shock, mental anguish, or mental injury." *Id*. at p. 51. "Bodily injury" means "physical bodily harm, including sickness or disease that results from it, and required care, loss of services and resulting death." *Id*. "Occurrence" is defined, in pertinent part, as "an accident which begins within the policy period resulting in bodily injury, shock, mental anguish, mental injury, or property damage." *Id*. at p. 50.

Under Pennsylvania law, the term "accident," as used in an insurance policy, means "an unexpected and undesirable event occurring unintentionally, and . . . the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007). An "accident" has also been described as,

> an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

*State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (quoting

*Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963)) (emphasis added).

Thus, an "accident" is "an event happening by chance unexpectedly taking place. It is the

opposite of something likely to occur, foreseeable in due course." *Lower Paxton Twp. v. U.S.

Fidelity & Guar. Co.*, 557 A.2d 393, 398 (Pa. Super. Ct. 1989). "An act is accidental if premised

on the negligent acts of the insured." *Colony Ins. Co. v. Mid-Atlantic Youth Servs. Corp.*, 485 F.

App'x 536, 540 (3d Cir. 2012) (citing *Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222,

225 (3d Cir. 1998)).

    2.   Analysis

        a.   "Personal Injury" caused by an "Occurrence"

Chubb argues that the Rouse Complaint does not allege a "personal injury" caused by an

"occurrence" within the meaning of its policy.   If the Rouse Complaint cannot meet those

definitions under the policy, Chubb maintains that it has no duty to defend and, by extension, no

duty to indemnify the Rosenbergs. Under its policy, Chubb contends that "personal injury"

includes "shock, mental anguish, or mental injury" and that "occurrence" is defined, in relevant

part, as an "accident."  (2:22-cv-00198 at ECF No. 1-2 at 51).   Chubb further argues that facts,

as alleged in the Rouse Complaint, do not fit the meaning of an "accident" as interpreted under

Pennsylvania law.  In Chubb's letter to the Rosenbergs, denying coverage under the Rouse

Complaint, Chubb stated:

> Coverage does not apply for the Lawsuit because the factual allegations asserted
> against you do not constitute personal injury caused by an occurrence as required
> by the Personal Liability Coverage insuring agreement. This conclusion follows
> because the acts you are accused of committing are intentional and not accidental
> or fortuitous.

(ECF No. 27-4 at p. 3).

Chubb contends that the allegations against the Rosenbergs in the Rouse Complaint are not premised on allegations of "fortuity" or "events happening by chance."  Instead, Chubb asserts that, rather than being subject to "forces working without design, coordination or plan," the Rosenbergs are alleged to have purposefully acted together "in an effort to" prevent or delay the arrest and prosecution of their son, Adam, for killing Christian.  Chubb argues that none of the acts at issue is alleged to have been an accident. Therefore, Chubb maintains that the Rosenbergs' intent to injure Ms. Rouse, in relation to their disposal of the gun, if any, is irrelevant to whether such conduct was an accident.

In response, the Rosenbergs contend that Chubb's determination, that no "occurrence" or "accident" is alleged in the underlying complaint, was incorrect under Pennsylvania law. Specifically, they maintain that the allegations of recklessness, as alleged in paragraphs 37 and 39, are essential elements of Ms. Rouse's intentional infliction of emotional distress claim, and that recklessness cannot be equated with intentional conduct.  The Rosenbergs further argue that Chubb's focus upon the Rosenbergs' intentional act of giving the gun to their marriage counselor, is misplaced. The Rosenbergs maintain that the insurance coverage inquiry should consider whether their actions were intentionally injurious, rather than whether their actions were taken intentionally.  Therefore, the Rosenbergs argue that the Court can infer from the Rouse Complaint that, because that they did not subjectively intend the alleged harm, i.e. the emotional distress alleged by Ms. Rouse, their policy should provide coverage.

Ms. Rouse, as Intervenor, reiterates the Rosenbergs' positions.  In addition, she contends that the language of the Rouse Complaint presents factual allegations that can support her claim that the Rosenbergs' actions, that caused Ms. Rouse's emotional distress, derived from reckless conduct for which insurance coverage should apply.

With regard to pleadings in cases involving insurance coverage questions, the Pennsylvania Supreme Court has held, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered." *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (1999).  Instead it is necessary to look at the factual allegations contained in the complaint.  *Id.*; *see also Colony Ins. Co. v. Mid-Atl. Youth Servs. Corp.*, 485 Fed.Appx. 536, 540 (3d Cir. 2012) (acts cannot be seen as accidental because they were deliberate efforts to initiate and perpetuate the conspiracy) (*Andrews v. Fullington Trailways, Ltd. Liab. Co.*, 2016 WL 3748579, at *8 (W.D. Pa. July 8, 2016) ("[M]erely sprinkling the Underlying Complaint with the words like 'unreasonable' and 'negligently' does not suffice to transform alleged intentional conduct into negligent conduct."); *State Farm Fire & Cas. Co. v. Scalia*, 2014 WL 6982926, at*7 n.3 (M.D. Pa. Dec. 9, 2014) ("[T]he mere usage of legal terms such as 'negligence' and 'recklessness' in a complaint are not determinative of coverage."); *Agora Syndicate v. Levin*, 977 F. Supp. 713, 715 (E.D. Pa. 1997) ("[A]rbitrary use of the word 'negligence' will not trigger an insurer's duty to defend.").

Here, a careful reading of the factual allegations of the Rouse Complaint, the language of the policy, and the case law regarding "occurrence" and "accident" leads to the inevitable conclusion that the "Personal Injury" suffered by Ms. Rouse under her IIED claim was not caused by any "Occurrence" under the Chubb Policy.  Ms. Rouse's complaint is rife with factual allegations that cannot be described as fortuitous or accidental.   The Rouse Complaint alleges that the Rosenbergs found the handgun, knew it was likely evidence in Adam's crime, and they transferred possession of the gun to their marriage counselor for the purpose of preventing/delaying Adam Rosenberg's arrest and prosecution.  As a result of these alleged actions and inactions, the police investigation and discovery of Christian's remains were delayed.

All of these alleged actions or inactions demonstrated that the Rosenbergs acted with the intent to accomplish their particular goal, i.e. to prevent and/or delay Adam's prosecution. Such alleged conduct presents a straightforward example of actions that do not fit within the realm of accidental.

Moreover, the conclusory allegations of recklessness do not convert the Rosenberg's actions into occurrences or accidental to trigger coverage in this case. In Pennsylvania, the plain meaning of recklessness requires an awareness of one's conduct that stretches beyond accidental in order to fit the meaning of "occurrence." Although reckless conduct can support an IIED claim, in the present case, conclusory allegations of "recklessness," or its other iterations does not transform the Rosenbergs' action into an "occurrence" to trigger coverage under the Chubb Policy. Conclusory allegations aside, each act by the Rosenbergs, as alleged within the Rouse Complaint, demonstrates their intent, awareness, and/or conscious purpose to accomplish their intended result, i.e., to prevent or delay the arrest and prosecution of their son. For purposes of assessing insurance coverage, whether or not the Rosenbergs had any intentional or reckless state of mind, vis-à-vis the causal effect upon Ms. Rouse's emotional status, is not relevant. Therefore, based upon the foregoing, the "personal injury" alleged by Ms. Rouse is not an "occurrence" that would trigger Chubb's coverage obligations under its policy.

Accordingly, for these reasons alone, the Rosenberg's Motion for Judgment on the Pleadings against Chubb will be denied; and Chubb's Motion for Judgment on the Pleadings against the Rosenbergs will be granted.

      b.  "Intentional Acts" Exclusion

Chubb contends, that even if the Rouse Complaint alleged an "occurrence," (which the Court has determined it does not), the "intentional acts" exclusion language of the policy would exclude coverage. The "intentional acts" exclusion of the Chubb Policy provides as follows:

> **Intentional acts.** We do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. An intentional act is one whose consequences could have been foreseen by a reasonable person.

(2:22 ECF No. 1-2 at p. 61). Chubb maintains that its "intentional acts" policy exclusion provides for an objective standard. Under such standard, the focus is upon the insured's intention to act; it does not concern the insured's intent as to the result.

Chubb argues that, in Pennsylvania, courts broadly interpret the phrases "arising out of" and "any covered person" when applying the "intentional act" exclusion. According to Chubb, the Rosenbergs concede that, under Pennsylvania law, "arising out of" means "but for" causation and phrases like "any insured" in a policy exclusion mean that "the prohibited acts of one insured bar all others from coverage." Chubb further argues that, based on the allegations in the Rouse Complaint, Ms. Rouse would not have suffered her alleged damages for emotional distress "but for" the intentional acts of 1) Adam, a "covered person," who killed Christian, in allegedly shooting Christian with a handgun, and 2) the Rosenbergs, also "covered persons" who allegedly transferred/concealed the handgun. Therefore, Chubb concludes that, because all of the damages alleged in the Rouse Complaint arise out of "intentional acts" by "covered persons," the "intentional acts" exclusion bars coverage under the Chubb Policy for all claims and damages alleged in the underlying action. In such case, Chubb asserts that the "intentional act" exclusion bars coverage for the Rosenbergs.

The Rosenbergs argue that the "intentional acts" exclusion does not bar coverage for Ms. Rouse's IIED claim because 1) an IIED claim can be proven with mere reckless conduct under Pennsylvania law and 2) the Rouse Complaint alleges that the Rosenbergs acted "recklessly." They further maintain that Pennsylvania state and federal courts have held that coverage for IIED claims is not barred by intentional acts exclusions since such claims can be proven by demonstrating "recklessness." The Rosenbergs therefore contend that the claims against the Rosenbergs can potentially fall outside the scope of the "intentional acts" exclusion. [3]

Pennsylvania courts interpret the phrase "arising out of" in policy exclusions in a very broad manner to mean a casual, "but for" relationship. *Madison Contr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999); *McCabe v. Old Republic Ins Co.*, 228 A.2d 901, 903 (Pa. 1967) (stating that "arising out of" unambiguously means "causally connected with, not proximately caused by"). If the alleged injuries would not have happened but for the excluded conduct, the injuries "arise out of" the conduct. *First Liberty Ins. Corp. v. Coll*, 2015 Phila. Ct. Com. Pl. LEXIS 14, at *14 (Pa. Ct. Comm. Pl. Jan. 6, 2015), *aff'd*, 131 A.3d 85 (Pa. Super. Ct. 2015). The application of an exclusion also does not depend on whether the insured intended the

---

[3] The Rosenbergs also argue that the "intentional acts" exclusion would not absolve Chubb of its duty to defend since Adam's "intent" has not been conclusively established. However, the same is belied by the guilty plea disposition and colloquy related to his murder conviction.
In a related case, *Chubb, et al v. Adam Rosenberg, et al*. 2:22-cv-633, wherein Chubb and Hudson seek a declaration that Adam Rosenberg is owed no duty to defend and indemnification under their policies. As part of the motions for judgment on the pleadings in that case, Adam Rosenberg's guilty plea disposition and accompanying colloquy was included as part of the record. Chubb and Hudson argued that, in his plea colloquy, Adam Rosenberg has admitted to the intentional act of killing Christian Moore-Rouse. (2:22-cv-633 at ECF No. 36-5). Both the Rosenbergs and Ms. Rouse, who have participated in the related case, have conceded that the plea colloquy, court acceptance of the guilty plea, and subsequent guilty conviction evidences Adam's intentional act and that no coverage for defense and indemnification would be owed to Adam Rosenberg under either the Chubb and Hudson policies. As the parties have acknowledged these public judicial records, this Court will likewise take judicial notice for purposes of determining Adam Rosenberg's actions as intentional acts under the policies.

injury in question.  *See Am. Nat'l Prop. & Cas. Cos. v. Hearn*, 93 A.3d 880, 886 (Pa. Super. Ct. 2014). A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the Rouse Complaint triggers coverage.  *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).   However, a complaint's stated cause of action is not determinative in coverage analysis. *Id*.   Instead, a court must look at the factual allegations contained in the Rouse Complaint. *Id*.   Courts have rejected coverage where the factual allegations of intentional, reckless, and wanton conduct, in the Rouse Complaints do not support negligence or accidents.  *See Markel Intl. Ins. Co.*, 805 F.Supp.2d 88, 94 (M.D. Pa. 2011); *Allegheny Ludlum v. Liberty Mut. Ins. Co.*, 487 F.Supp.3d 350, 361 (W.D. Pa. 2020) ("Equating reckless or wanton conduct with 'unexpected results,' a counterintuitive inference from the Court's point of view, without any clear authority is a bridge too far.")

Here, the "intentional acts" exclusion precludes coverage for the conduct described in the Rouse Complaint.  The "arising out of" acts described in the Rouse Complaint stem from intentional acts of Adam Rosenberg killing Christian Moore-Rouse and out of the alleged actions by the Rosenbergs in intentionally transferring possession of the murder weapon, delaying the investigation, and delaying the discovery of Christian's body.  Said acts, under the theory espoused in the Rouse Complaint, are the "but for" causes of Ms. Rouse's emotional distress. Just as in the "occurrence" analysis above, the Rosenbergs and Ms. Rouse's arguments regarding the recklessness component are unavailing.  The Rouse Complaint offers no more than a legal conclusion regarding recklessness absent any factual allegation that would resemble an unintentional act.  Therefore, after applying the definitions of "arising out of" and "but for" causation, the allegations in the Rouse Complaint would exclude the Rosenberg's from coverage under the Chubb policy.

In addition to reiterating the Rosenbergs' arguments, Ms. Rouse contends that Chubb's intentional act exclusion contains an exception that dictates coverage in this case. The exception language provides, "[b]ut we do cover such damages if the act was intended to protect people or property unless another exclusion applies."  Ms. Rouse maintains that, in the context of the Rouse Complaint, the Rosenbergs secreted the gun to protect their son.  Therefore, she argues that the Rouse Complaint avers facts that require coverage under this exception to Chubb's intentional acts exclusion.

With regard to the Rouse argument, vis-à-vis the exception to the intentional act exclusion, Chubb maintains that,  even if Ms. Rouse's allegations could be construed as alleging an act "intended to protect people," the exception should be rejected because it would not apply to Adam's acts in causing Christian's death (which, again, are a "but for" cause of Rouse's alleged damages). Moreover, Chubb contends permitting the Rosenbergs to avail themselves of the exception, violates Pennsylvania's public policy against insurance for wrongful and criminal acts.

Pennsylvania bars insurance coverage where relieving an insured of personal accountability for their wrongdoing would contravene a clear mandate of Pennsylvania public policy. *See Minnesota Fire & Cas. Co. v. Greenfield,* 855 A.2d 854, 355 (Pa. 2004). Pennsylvania courts have barred enforcement of insurance contracts on multiple other public policy grounds as well. *See e.g., Haver*, 725 A.2d at 541(distributing medication to individuals without a prescription); *Central Dauphin School District v. American Cas. Co.*, 426 A.2d 94, 96 (Pa. 1981) (wrongfully levying taxes); *Federal Ins. Co. v. Sandusky*, No. 11-02375, 2012 WL 1988971, at *3-4 (M.D. Pa. June 4, 2012) (child abuse); *Nautilus Ins. Co. v. Motel Management*

*Srvcs., Inc.*, 320 F.Supp.3d 636, 643 (E.D. Pa. 2018), aff'd on other grounds 781 F.App'x 57 (3d

Cir. 2019) (human trafficking); *Germantown Ins. Co. v. Martin*, 565 A.2d 1172, 1175 (Pa. Super.

1991) (murder).   A criminal conviction is not required to deny coverage on public policy

grounds. *See Nautilus Ins. Co. v. Motel Management Srvcs., Inc.*, 320 F.Supp.3d 636, 643 (E.D.

Pa. 2018) *aff'd on other grounds* 781 F.App'x 57 (3d Cir. 2019) (no duty to defend allegations of

sex trafficking even though insureds were not criminally convicted).

 Ms. Rouse's "intentional act" exclusion argument for an exception is unavailing.   Ms.

Rouse's own allegations conjure wrongful or criminal conduct where it would violate public

policy to provide insurance coverage.   Under Pennsylvania criminal statute, concealing a firearm

used in a murder is a crime for an accessory after the fact. *See Commonwealth v. Jordan*, 212

A.3d 91, 98 (Pa. Super. 2019) (recognizing that the crime is now codified at 18 Pa.C.S. § 5105 as

Hindering Apprehension or Prosecution). Likewise, it is also an offense to conspire to hinder the

prosecution or apprehension of a convicted murderer. *See Id.*; 18 Pa.C.S. § 903.   While there is

no reflection in the record that the Rosenbergs faced any criminal prosecution, the allegations in

the Rouse Complaint support wrongful and/or criminal conduct.   Thus, as a matter of public

policy, the Rosenbergs cannot benefit under their Chubb policy.   Therefore, Chubb's "intentional

act" exclusion will apply to the allegations against the Rosenbergs in the Rouse Complaint.

 Accordingly, based upon the "intentional act" exclusion, the Rosenberg's Motion for

Judgment on the Pleadings against Chubb will be denied; and Chubb's Motion for Judgment on

the Pleadings against the Rosenbergs will be granted.

  c. "Molestation, Misconduct or Abuse"

The Personal Injury Liability Coverage Part contains the following exclusion:

 **Molestation, misconduct or abuse.** We do not cover any damages arising out of
 any actual, alleged or threatened:

- sexual molestation;

- sexual misconduct or harassment; or

- abuse.

***

*Id*. at p. at 61.

When interpreting insurance language, the Third Circuit has noted, "'[w]hen syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.'" *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 180 (3d Cir. 2013) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 153 (2012)).  More specifically, when interpreting identical exclusion language, as in the Chubb policy at issue, the Tenth Circuit, in *Hecht v. Great N. Ins. Co.*, 769 F. App'x 562 (10th Cir. 2019), rejected the insured's argument that "abuse," meant "sex abuse," reasoning that the interpretation "ignore[d] the plain language of the policies" and "ignore[d] the exclusion's use of the disjunctive 'or,' which signals separate and distinct grounds for denying coverage." *Id*. at 568-69.

Chubb maintains that, under the "molestation, misconduct or abuse" exclusion in its policy, there is no coverage for "damages arising out of any actual, alleged or threatened sexual molestation, sexual misconduct or harassment, or abuse.  Chubb contends that, unlike the terms "molestation" and "misconduct or harassment," the term "abuse" is unmodified; and therefore, "abuse" is not limited to "sexual abuse." Instead, Chubb asserts that "abuse" should be given its ordinary meaning: "physical maltreatment." "Abuse," *Merriam Webster's Dictionary*, available at https://www.merriam-webster.com/dictionary/abuse.  Therefore, Chubb argues that Adam Rosenberg's alleged shooting of Christian indisputably constitutes physical maltreatment and,

17

therefore, "abuse." Accordingly, Chubb maintains, that because, Adam Rosenberg's act is a "but for" cause of Rouse's alleged damages, the "molestation, misconduct or abuse" exclusion in the Chubb Policy also bars coverage for all claims and damages alleged in the underlying action.

The Rosenbergs and Ms. Rouse argue that Chubb has not defined the words in the "Molestation, misconduct, or abuse" exclusion, such that a plain reading of this exclusion applies to sexual misconduct and to sexual abuse.  Therefore, the Rosenbergs and Ms. Rouse contend that the term, abuse, must be construed against Chubb and in favor of the Rosenbergs, because it relates only to sexual-type abuse given its context, placement, and usage in the Chubb Policy.

Here, the Court agrees with *Hecht*'s interpretation of the "molestation, misconduct or abuse" exclusion.  Regarding definitions and English usage, the Chubb Policy states as follows: "[i]n this policy, we use words according to their plain English meaning. Words with special meanings are defined in the policy where they are used." (2:22-cv-198 ECF No. 1-2 at p. 18). The plain and unambiguous meaning of the "abuse" is "physical mistreatment." While Chubb modified "molestation" and "misconduct" with "sexual," the word "abuse" appears to have been consciously and purposely left unmodified to encompass any "abuse," sexual or otherwise. The Rosenbergs' contention that, because two out of the three items in the series were modified with "sexual," support that the third "abuse" meant only sexual abuse, is not a fair reading of the exclusion.   Adam Rosenberg's alleged shooting of Christian constitutes abuse, because it constituted physical mistreatment.  And because that abuse is a "but for" cause of Ms. Rouse's alleged emotional distress damages, the "molestation, misconduct or abuse" exclusion in the Chubb Policy also bars coverage for all claims and damages alleged the Rouse Complaint.

Accordingly, based upon the "molestation, misconduct, and abuse" exclusion, the Rosenberg's Motion for Judgment on the Pleadings against Chubb will be denied; and Chubb's Motion for Judgment on the Pleadings against the Rosenbergs will be granted.

### B. Cross-Motions for Judgment on the Pleadings regarding Hudson Policy

The analysis of the Hudson Policy generally follows the same as above, but with a small nuance that the Court will briefly address.

1. Hudson Policy

The Rosenberg's Hudson Policy is a personal umbrella insurance policy, designed primarily to provide excess insurance beyond the existing limits and coverages of other policies, such as a homeowners or auto insurance policy. The Hudson Policy contains the following general insuring clause:

**INSURING AGREEMENTS**

**I.    COVERAGES**

Coverage A – Excess Bodily Injury, Personal Injury and Property Damage Liability. The Company will pay on behalf of the insured the amount of ultimate net loss, which the insured becomes legally obligated to pay:

1.      in excess of the underlying limits, whether collectible or not, because of bodily injury, personal injury, or property damage to which this policy applies, caused by an occurrence; or

(ECF No. 27-2 at p. 5). The definition of "bodily injury" in the Hudson Policy specifically includes emotional distress *Id*. at p. 12.

The Hudson Policy further provides the following definition of "occurrence:"

"occurrence" means:

(1)      an accident or accidental event, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured (other than an intentional act by or at the direction of the insured which results in bodily

injury, if such injury arises solely from the use of reasonable force for the
purpose of protecting persons or property);

*Id*. at p. 12-13.  The Hudson Policy further provides:

### III.DEFENSE AND SETTLEMENT

    A.  With respect to occurrences which are covered under Coverage A of this
policy but which are not covered or required to be covered by the
underlying insurance, the Company, if no other insurer has an obligation
to do so, shall defend any suit against the insured seeking damages on
account of bodily injury, personal injury, or property damage, even if any
of the allegations of the suit are groundless, false, or fraudulent. The
Company shall have the right to make such investigation and settlement of
any claims of suit as it deems expedient.

*Id*. at p. 5.

    2.     Analysis

Hudson argues that it correctly disclaimed coverage to the Rosenbergs with regard to the

Rouse Complaint.  Specifically, Hudson, like Chubb, contends that 1) the Rouse Complaint does

not allege an "occurrence,"; 2) the Rouse Complaint's passing reference to "recklenssness" fails

to trigger coverage; and 3) that public policy precludes coverage for wrongful and criminal acts.

Hudson also maintains that, even if the Rouse Complaint did plead an "occurrence," sufficient to

trigger a duty to provide coverage, said duty to defend falls first to Chubb, not Hudson.

The Rosenbergs and Ms. Rouse argue that Hudson's duty to defend was triggered upon

the denial of coverage by Chubb, even though Chubb's policy limits had not been exhausted.

They contend that, where an underlying insurer (Chubb) denies coverage for claims which would

be otherwise covered by the umbrella policy (Hudson), the umbrella policy is required to "drop

down" and provide a defense for the Rosenbergs.

This Court's above analysis and conclusions under the Chubb policy, regarding

"occurrence," "recklessness," and public policy, apply to the Hudson policy as well.   Under the

unambiguous language of its policy, an analysis of Hudson's duty to defend only begins if

Chubb failed to accept a tender of defense from the Rosenbergs.  Even then, Hudson's duty to

defend is only triggered by an "occurrence."  Either way, the result is the same, given the

"occurrence" definitions in each policy.  The respective policy definitions are not identical, as

shown by the pertinent side-by-side representations below:

| Hudson | Chubb |
|---|---|
| "occurrence" means:<br><br>an accident or accidental event, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured (other than an intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property);<br><br>(ECF No. 27-2 at p. 5) | "Occurrence" means:<br><br>An accident which begins within the policy period resulting in bodily injury, shock, mental anguish, mental injury, or property damage;<br><br>(2:22-cv-00198 at ECF No. 1-2 at 51) |

The key term in these definitions is "accident," which the Court has noted above is "an

unexpected and undesirable event occurring unintentionally, and . . . the key term in the

definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Baumhammers*,

938 A.2d at 292.   As above, analysis of the factual allegations within the Rouse Complaint, the

Hudson policy language, and the case law regarding "occurrence" and "accident" leads to the

inevitable conclusion that the "bodily injury" suffered by Ms. Rouse, as claimed in her IIED

claim, was not caused by any "occurrence" under the Hudson Policy. The Court also

incorporates its analysis above regarding "recklessness," and public policy arguments. As such,

Hudson has no obligation under its policy to provide the Rosenberg's defense or indemnification.

Accordingly, the Rosenberg's Motion for Judgment on the Pleadings against Hudson will be denied; and Hudson's Motion for Judgment on the Pleadings against the Rosenbergs will be granted.

IV.    Conclusion

For the reasons stated above, the Rosenbergs' Motions for Judgment on the Pleadings against Chubb and Hudson will be denied.  Chubb's and Hudson's respective Motion for Judgment on the Pleadings against the Rosnbergs will be granted.  Judgments will be entered in favor of Chubb and Hudson and against the Rosenbergs.   A separate order will follow.

DATED this 31st day of October, 2022.

BY THE COURT:

MARILYN J. HORAN
United States District Judge